FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2019 JAN 14  AM 8: 32

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No:  **'19 - CV - 0 0 1 1 6**

ANDREW J. O'CONNOR and MARY E. HENRY,

    Plaintiff,

v.

COMCAST, COMCAST OF COLORADO I, LLC, BRIAN ROBERTS, STEVE WHITE, CITY OF LAFAYETTE and CITY OF LAFAYETTE POLICE DEPARTMENT, individually and severally,

    Defendants.

---

## COMPLAINT FOR DAMAGES PURSUANT TO 42 U.S.C. § 1201 et seq., and TITLE VII OF THE CIVIL RIGHTS ACT

---

    **COMES NOW,** pro se Plaintiffs Andrew J. O'Connor and Mary E. Henry

and files this Complaint for Damages Pursuant to 42 U.S.C. § 1201 et seq., and Title VII

of the Civil Rights Act against Defendants Comcast, Comcast of Colorado I, LLC, Brian

Roberts, Steve White, City of Lafayette and City of Lafayette Police Department,

individually and severally  for actual damages, compensatory damages, punitive and

statutory damages including, but not limited to, trespass, defamation, intentional

infliction of severe emotional distress, mental anguish, pain and suffering plus reasonable

attorney fees and costs associated with this action for violations of the civil rights pro se

Plaintiffs' under the 4th and 5th Amendment of the U.S. Constitution as well as for

violations of the Americans with Disabilities Act 42 U.S.C. § 1201 et. seq., and Title VII

of the Civil Rights Act.

1

## JURISDICTION AND VENUE

Jurisdiction of this Court arises under 42 U.S.C. § 1201 et. seq., and Title VII of the Civil Rights Act. Venue is proper in the United States District Court, District of Colorado because the actions and transactions occurred in this District and because Plaintiffs reside here and Defendants are located here or transact business here.

## PARTIES

1.    Pro se Plaintiffs Andrew J. O'Connor and Mary E. Henry, (hereinafter "Plaintiffs") are residents of Boulder County, Colorado.

2.    Defendant Comcast, (hereinafter "Comcast") is a private, global telecommunications monopoly headquartered in Philadelphia, Pennsylvania and owns and operates Xfinity, NBC, MSNBC, CNBC, USA Network, NBCSN and E!, as well as Universal Pictures and Universal Studios. Its principal address is 1701 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103-2838. However, and most importantly for this case, Comcast is *not* a public utility and has 15 or more employees and at all times relevant to this action, Comcast's actions were in violation of Colorado and Federal law including, but not limited to, 42 U.S.C. §1201 et. seq., and Title VII of the Civil Rights Act.

3.    Defendant Comcast of Colorado I LLC, (hereinafter "CO Comcast") is a Colorado Foreign Limited Liability Corporation with its registered agent The Corporation Company, 1675 Broadway, Suite 1200, Denver, Colorado 80203. However and most importantly for this case, CO Comcast is *not* a public utility and has 15 or more employees and at all times relevant to this action, Comcast's actions were in violation of

Colorado and Federal law including, but not limited to, 42 U.S.C. §1201 et. seq., and Title VII of the Civil Rights Act.

4.   Defendant Brian Roberts ("Roberts") is Chairman and CEO of Comcast Corporation.

5.   Defendant Steve White ("White") is President, West Division and the senior executive responsible for all Comcast cable operations in Colorado.

6.   Defendant City of Lafayette ("Lafayette") is a Home Rule Municipality located in Boulder, Colorado.

7.   Defendant City of Lafayette Police Department ("Police") is the crypto fascist, para-military force and capitalistic enforcer that operates as a police department for the City of Lafayette.

## PRELIMINARY BACKGROUND

Comcast is one of the most reviled corporations in the United States. Recently, Washington State Attorney General Bob Ferguson filed a lawsuit against cable television and Internet giant Comcast Corporation in King County Superior Court, alleging the company's own documents reveal a pattern of illegally deceiving their customers to pad their bottom line by tens of millions of dollars. The lawsuit accuses the company of more than 1.8 million violations of Washington State's Consumer Protection Act (CPA), including misrepresenting the scope of its Service Protection Plan, charging customers improper service call fees and improper credit screening practices. The lawsuit also accuses Comcast of violating the CPA to all of its nearly 1.2 million Washington subscribers due to its deceptive "Comcast Guarantee."

In Vermont, Comcast this litigation-happy monolith is suing the state Public Utility Commission, claiming, among many other things, that its First Amendment rights have been violated (because the company is unhappy about the terms under which it is obliged to provide service there). Evidently, this most dishonest and predatory corporation is trying to have it both ways. In the present case it falsely claims that it *is* a public utility in order to trespass on pro se Plaintiffs' private property 24/7 without compensating the Pro Se Plaintiffs; however, in Vermont and the rest of the United States, Comcast states it is *not* a public utility because it does not want to be regulated nor pay its fair share in Federal or State taxes.

On November 20, 2018, local news outlets reported that Comcast workers drilling underground for fiber optic cable struck buried natural gas lines at a senior living community in east suburban Denver shortly before a fatal explosion that burned several homes. Aurora Fire Rescue spokeswoman Sherri-Jo Stowell told The Denver Post firefighters were at Heather Gardens Friday investigating a gas leak when the explosion occurred. The blast killed 82-year-old Carol Ross. It is clear, that Comcast is a dangerous and dishonest corporation that threatens the health, safety and welfare of Coloradoans and all Americans.

All of Defendants' pleadings filed in this Court and state court contain material misrepresentations; however, Defendants repeat several material misrepresentations that go to the core of this case and are as follows:

> A. *Since July 2018, Comcast has been engaged in a project to launch an "Advanced Fiber Optic Network Project" in the City of Lafayette. As part*

4

> *of that Project, Comcast representatives **must** (emphasis added) access Defendants' property...for the purpose of...updating that plant with fiber optic facilities...to perform its limited scope of work...harms the Defendants' neighbors by denying them access to the advanced services Comcast would provide upon completion of the upgrade project, and causes irreparable injury to Comcast through the impairment of its ability to provide services to customers.*

Said material misrepresentations raise several important questions that must be answered and, to date, Comcast has failed to answer:

1. **Why must Comcast access pro se Plaintiffs' property in order to complete the Advanced Fiber Optic Network Project?**

Comcast has made a material misrepresentation and libeled pro se Plaintiffs to this Court, state court, city officials, police and the media. First of all, it was never necessary for Comcast to access the property in order to complete an "Advanced Fiber Optic Network Project." In fact, there are no advanced fiber optic cables on pro se Plaintiffs' property and as far as pro se Plaintiffs know there are no plans to install advanced fiber optic cables on their property. Pro se Plaintiffs are not Comcast customers and never intend to be customers of this most dishonest, predatory and dangerous corporation. To date, Comcast has failed to provide ***any evidence*** substantiating these legal conclusions.

2. **How does not accessing pro se Plaintiffs' property harm their neighbors and deny them access to advanced services and impair its ability to provide services to customers?**

In October of 2018, Comcast workers knocked on the doors of pro se Plaintiffs' neighbors and lied to them saying that pro se Plaintiffs were the cause of them not being able to purchase high speed internet service from Comcast. Why would anyone want to purchase mediocre cable service and be overcharged by Comcast? On October 24, 2018, Comcast also repeated the lie to the Daily Camera and induced them to publish a false and misleading story with the headline, Lafayette resident's Comcast dispute endangering service to hundreds of neighbors, company says. Anthony Hahn, Daily Camera (October 24, 2018). The story quotes Comcast officials by falsely stating that the dispute between the parties *could cause service outages for hundreds of surrounding residents near Baseline Road and U.S. 287, company officials say*. Again, to date, Comcast has failed to provide ***any evidence*** that it must access pro se Plaintiffs' property in order to complete the *"Advanced Fiber Optic Network Project"* and that not accessing the property would somehow *cause service outages for hundreds of surrounding residents near Baseline Road and U.S. 287*. Not only was the story false it was defamatory.

3. **What does Comcast want to do on pro se Plaintiffs' property for "approximately 1-2 hours" and what is in the green box on their property and does it pose an existential threat to their health, safety and welfare?**

To date, Comcast has refused and failed to explain to pro se Plaintiffs what it wants to do on their private property for "approximately 1-2 hours." In fact, pro se Plaintiffs have repeatedly asked Comcast workers what is in the green box and why they want to access the property and what work do they have to perform there and Comcast has always refused to answer those reasonable questions.

6

According to May 1, 2000 article in Electrical Construction and Maintenance Magazine, Don't Ignore Hazards with Fiber Optic, https://www.ecmweb.com/content/dont-ignore-hazards-associated-fiber-optics, there are significant safety hazards associated with installation of fiber optic cable. Another article details the safety risks of explosions with high optic fiber networks. https://www.microsens.com/whitepapers/safety-of-optical-fiber-networks-in-potentially-explosive-areas/

On November 20, 2018, local news outlets reported that Comcast workers drilling underground for fiber optic cable struck buried natural gas lines at a senior living community in east suburban Denver shortly before a fatal explosion that burned several homes. Aurora Fire Rescue spokeswoman Sherri-Jo Stowell told The Denver Post firefighters were at Heather Gardens Friday investigating a gas leak when the explosion occurred. The blast killed 82-year-old Carol Ross. A January 31, 2016, article in Natural Medicine details the significant health risks associated with fiber optic cable. http://www.naturalmedicine.net.nz/news/considering-ultrafast-broadband/

It is clear, that Comcast is a dangerous and dishonest corporation that does not care about pro se Plaintiffs, Coloradoans or Americans health, safety or welfare. Defendants' unlawful activities absolutely threaten the health, safety and welfare of Plaintiffs, Coloradoans and all Americans. Pro se Plaintiffs have a ten (10) year old daughter and a beloved blue heeler named Einstein, and the dog that lives in the backyard and they are very uncomfortable with the existential risks that Defendants' illegal activities pose to their health, safety and welfare.

7

B. *Comcast has a legal right to access the Property **by way** (emphasis added) of a public utility easement granted to the City of Lafayette and a Cable Franchise Agreement entered into by and between the City of Lafayette and Comcast.*

### 1. Does Comcast have a legal right to access pro se Plaintiffs' private property and does it own an express easement on their private property?

Comcast ***does not*** have a legal right to access their private property because Comcast ***does not own an express easement*** on pro se Plaintiffs' property and Comcast cannot prove that it does and Comcast knows it.

The Franchise Agreement between Comcast and the Defendant City of Lafayette does not grant an implied easement onto their private property because Comcast admits that they don't have an express easement. Furthermore, the Franchise Agreement between Comcast and the City of Lafayette franchise agreement is invalid and is therefore null and void.

These are clearly Federal questions involving Federal law including, but not limited to:

a. Whether the Cable Communication Policy Act of 1984, 47 U.S.C. § 1541, applies to the case?

b. Does Comcast's lawsuit against the pro se Plaintiffs impact the 4th and 5th Amendments of the U.S. Constitution?

After establishing a pattern of harassing, bullying, abusing, intimidating and threatening tactics, Comcast erroneously and intentionally filed Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunction in Boulder District Court in Case No: 018CV31084 in order to waste court resources and do an end of around the Federal Court. The reason that Comcast filed Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunction in Boulder District Court is because Comcast wanted to do an end around and does not want litigate this case on the merits in Federal Court. There are really only two core questions in this case which are:

    a.   Is Comcast a public utility in Colorado and the U.S.?

    b.   Does Comcast have an express easement on pro Se Plaintiffs' private property?

The answer to both questions is an unequivocal **"NO"**.  Comcast knows that it will lose on the merits in Federal Court. That is the reason for the attempted end around by Comcast in filing the Motion for Temporary Restraining Order and Preliminary Injunction in state court.

Comcast has made so many material misrepresentations to both State and Federal Court that pro se Plaintiffs have lost count. Comcast lied to the lower court and falsely stated that pro se Plaintiffs violated the Temporary Restraining Order which constitutes a fraud upon the Court and as a result Comcast's attorneys should be sanctioned. In fact, pro se Plaintiffs did not violate the Temporary Restraining Order and the TRO was erroneously entered because the state court lacked jurisdiction and failed to determine whether Comcast was a public utility and whether pro se Plaintiff had an express

easement before erroneously entering the TRO without a full evidentiary hearing.

Venue and jurisdiction were improper in District Court, Boulder County, Colorado because Comcast continually cites in its pleadings the Cable Communication Policy Act of 1984, 47 U.S.C. § 1541 as the governing, substantive Federal law that is controlling in this action and even repeatedly states in its pleadings that is well established Federal law.

This case involves several Federal questions that arise under the Cable Communication Policy Act of 1984, 47 U.S.C. § 1541, as well as under the 4th and 5th Amendments of the U.S. Constitution that must be litigated and determined under Federal law. Furthermore, diversity of citizenship exists pursuant to 28 U.S.C. § 1332 (a) because Comcast is an out of state corporation with its principal place of business located in Philadelphia, Pennsylvania and pro se Plaintiffs are residents of Lafayette, Colorado.

The question of whether a U.S. citizen's private property rights are subordinated to the commercial interests of a private company is a Federal question and is a matter to be determined under Federal law. This case implicates both the 4th and 5th Amendments of the U.S. Constitution. The 4th Amendment is implicated because State Action is involved because Comcast used Defendant Lafayette Police Department in order to try to get Pro se Plaintiff O'Connor arrested and the police harassed, intimidated and threatened pro se Plaintiffs on several occasions. Defendant Lafayette Police Department is a crypto fascist, para-military force which is a capitalistic enforcer that at war with the people of Lafayette.

The 4th Amendment states:

*The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.*

The 5th Amendment further protects private property and states:

*No person shall be ... deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.*

Comcast attempted to take pro se Plaintiffs' private property and refused to compensate them. Comcast's unlawful and unconstitutional actions have deprived pro se Plaintiffs of their rights under the 4th and 5th Amendments of the U.S. Constitution. Comcast's lawsuit clearly generates Federal questions under the Cable Communication Policy Act of 1984, 47 U.S.C. § 1541, as well as under the 4th and 5th Amendments of the U.S. Constitution.

## **FACTUAL ALLEGATIONS**

1. On November 27, 2018, Comcast filed a frivolous lawsuit against the pro se Plaintiffs in Boulder County District Court because pro se Plaintiffs were standing up for their private property rights.

2.  On December 10, 2018, Pro Se Defendants properly removed this case to Federal
    Court pursuant to 28 U.S.C. § 1447. On December 10, 2018, the state court closed
    the lower court case confirming that the case was properly removed to Federal
    Court.

3.  On January 8, 2019, Defendants bamboozled elderly Federal Court Judge
    Babcock, who may have the beginning stages of dementia, by erroneously
    Citing and misstating the holding in *City of Albuquerque v. Soto Enterprises,
    Inc.,* 864 F.3d 1089 (10th Cir. 2017).

4.  Said case is inapplicable to the present case for several reasons as follows:

    a.  In order to challenge the sufficiency of removal to Federal Court, the
        Defendants had to establish that the Federal Court lacked subject matter
        jurisdiction ***and*** a defect in removal exists.

    b.  The Defendants' argument failed on both counts and it could not establish
        either requirement.

    c.  The Federal Court had subject matter jurisdiction in the case because
        Comcast's unlawful actions deprived pro se Plaintiffs of their rights under the
        4th and 5th Amendments of the U.S. Constitution and Comcast's lawsuit
        clearly generates Federal questions under the Cable Communication Policy
        Act of 1984, 47 U.S.C. § 1541, which they say is well established Federal law.

5. Even different Federal District courts disagree about whether waiver by participation even falls within either of § 1447 (c) two bases. *Henry v. UTE Indian Tribe of Uintah & Ouray Reservation*, 757 F. 3d 800, 804 (10th Cir. 2015). Pro se Plaintiffs don't believe that it does. In the present case, there is neither lack of subject matter jurisdiction nor any defect. And, pro Se Plaintiffs did not fail to comply with the statutory requirements for removal; consequently, there is no defect. *Rothner*, 879 F.2d 1407-08. Yet, Comcast's attorneys lied to the Federal Court and manipulated an elderly jurist who may have the beginning stages of dementia and they should be sanctioned accordingly.

6. Comcast also erroneously argued "waiver by participation." Pro se Plaintiffs immediately filed Notice of Removal Pursuant to 28 U.S.C. § 1446 (a) on November 10, 2018, and properly removed the case to Federal Court. In fact, there was no discovery, no argument, and the only hearing was on December 10, 2018, and lasted less than ten (10) minutes. There was no "waiver by participation" by pro se Plaintiffs. *Rotner v. City of Chicago*, 879 F. 2d 1407, 1409 (7th Cir. 1989). Furthermore, there was never *a willingness to litigate in state court.* In fact, it is exactly the opposite because by pro se Plaintiffs filed Notice of Removal Pursuant to 28 U.S.C. § 1446 (a) on December 10, 2018. By doing so and filing this case, pro se Plaintiffs demonstrated their willingness to litigate this case on the merits in Federal Court.

7.  Finally, *City of Albuquerque* case articulates an exception which clearly applied to the pro se Plaintiffs as follows:

    *We will not find a waiver of the right to remove when a state's procedural rules compel a defendant's state court participation. For this exception to apply, we look potential harm to defendant. May v. Board of County Commissioners*, 945 F. Supp. 2d 1277 (D.N.M. 2013).

8.  The Colorado Rules of Civil Procedure compelled Pro se Plaintiffs to file pleadings, answer and affirmative defenses or they are deemed waived. If pro se Plaintiffs failed to comply with the Colorado Rules of Civil Procedure and failed to file pleadings, answer and affirmative defenses in state court then they would have suffered grievous harm to their case.

9.  The case was properly removed to Federal Court because there is subject matter jurisdiction because Defendants' unlawful actions have deprived Pro Se Defendants of their rights under the 4th and 5th Amendments of the U.S. Constitution and Defendants' lawsuit clearly generates Federal questions under the Cable Communication Policy Act of 1984, 47 U.S.C. § 1541, as well as under the 4th and 5th Amendments of the U.S. Constitution.

10. There was subject matter jurisdiction and there were no defects in removal; consequently, *City of* Albuquerque did not apply to the present case and even if it did, then  the exception articulated in said case applied to pro se Plaintiffs and Comcast attorneys manipulated and took advantage of an elderly jurist, who may

14

have the beginning stages of dementia. Comcast's attorneys' actions are shameful and reprehensible and they should be sanctioned accordingly.

11. As in everything it does, Defendants are abusive, inherently dishonest, bullying and disingenuous and always wants to have it both ways.

12. Comcast attorneys defamed pro se Plaintiff O'Connor and disingenuously argued that he was not entitled to pro se deference because he is a *trained attorney*. Comcast attorneys defamed and character assassinated pro se Plaintiff O'Connor by misstating and mischaracterizing an irrelevant case from 2007.

13. What Comcast attorneys deceptively and in bad faith omitted is that pro se Plaintiff O'Connor was nearly killed when he was hit head-on by a drunk driver in Florida in 1992 and that he suffered multiple blunt trauma injuries including a traumatic brain injury resulting in being hospitalized for over thirteen (13) months and was placed on the Florida Bar's inactive list for medical incapacity not related to misconduct. There was no material misrepresentation made to the New Mexico Supreme Court and pro se Plaintiff O'Connor was and is in good standing with the Florida Bar. Yet, Comcast's attorneys continue to defame pro se Plaintiff O'Connor and they must be held accountable.

14. It seemed that Comcast knows that it is losing this case and has resorted to character assassinating pro se Plaintiff O'Connor in an attempt to discredit him

with the Court. Comcast's attorneys should be sanctioned for their outrageous conduct.

15. Defendants cannot have it both ways. Plaintiff cannot say that pro se Plaintiff O'Connor is a *"trained attorney"* and not entitled to pro se deference despite his injuries and traumatic brain injuries and then say that pro se Plaintiff O'Connor is not entitled to attorney fees. Pro se Plaintiff O'Connor was permanently disabled and suffers from cognitive deficiencies as a result of his traumatic brain injury and is absolutely entitled to pro se deference. And, on January 8, 2019, this Court granted pro se Plaintiffs pro se deference and denied Comcast attorney fees.

16. The Court should consider the Comcast's material misrepresentations, defamation, threats, abusive misconduct and the intimidating and the harassing tactics employed by Comcast as well as the frivolous nature of their lawsuit and pleadings and award pro se Plaintiff's damages and attorney fees and costs.

17. Defendants and this Court discriminated against pro se Plaintiff O'Connor because of his disability, a traumatic brain injury in violation of the Americans with Disabilities Act 42 U.S.C. § 1201 et. seq. and Title VII of the Civil Rights Act.

18. Plaintiff has a traumatic brain injury and belongs to a group protected by the Americans with Disabilities Act.

19. Plaintiff graduated from law school in 1987 and practiced law as an assistant public defender and drug court attorney in Tampa, Florida and Santa Fe, New Mexico.

20. On April 30, 1992, Plaintiff was severely injured and permanently disabled when he was hit head-on by a drunken driver in Pinellas County, Florida. Plaintiff suffered multiple blunt trauma injuries, including, but not, limited to: closed head injury resulting in a traumatic brain injury and necessitating a medically induced coma; fractured cheekbones resulting in surgery for titanium mesh implants, loss of teeth resulting in several surgeries for dental implants and bone grafts, surgical removal of damaged gall bladder and spleen, numerous surgeries to stop bleeding and repair damaged liver; two collapsed lungs or pneumothorax necessitating being placed on a ventilator and insertion of chest tubes; fractured femur necessitating surgery for insertion of titanium rod; broken tibia necessitating surgery for insertion of titanium rod; fractured ankle necessitating surgery for insertion of a metal plate, screws and bolts. Plaintiff was hospitalized for over one year and required numerous surgeries and was placed on a feeding tube for most of the time that he was hospitalized and his weight fell below 102 lbs.

21. Plaintiff underwent speech therapy, occupational and physical therapy where he learned to walk and talk again; however, he was permanently disabled and placed on inactive status for medical incapacity not related to misconduct with the Florida Bar.

22. Instead of supporting pro se Plaintiff O'Connor in his recovery, Defendants and this Court have character assassinated, stigmatized, defamed and demonized him and they should be ashamed of themselves but they aren't because everybody knows that Comcast, their attorneys and this Court lack a moral foundation, a modicum of decency, are unethical and as Capitalists always put profits before people.

23. Any one of the aforementioned serious injuries, but particularly the traumatic brain injury, qualifies Plaintiff as individual with a disability covered and protected by the ADA. This Court and Defendants discriminated against pro se Plaintiff O'Connor and violated the ADA.

## FIRST CLAIM FOR RELIEF
### (Damages for Trespass)

24. Plaintiff hereby re-alleges and re-incorporates by reference all preceding allegations of law and fact contained in paragraphs 1-23.

25. Defendants engaged in illegal and unconstitutional trespass on pro se Plaintiffs' property and refused to compensate them for this continuing, unlawful trespass.

26. As a proximate result of Defendants' wrongful trespass, arbitrary, capricious, malicious and discriminatory misconduct, pro se Plaintiffs suffered intentional infliction of severe emotional distress and requests an award for actual and compensatory damages; requests reimbursement for medical bills for treatment

for exacerbation of symptoms of anxiety, depression and PTSD; punitive damages and attorney fees and costs in an amount to be fully proved at the time of trial.

## SECOND CLAIM FOR RELIEF
### (Damages for Violations of 42 U.S.C. §1201 et. seq., and Title VII of the Civil Rights Act)

27. Pro se Plaintiff hereby re-alleges and re-incorporates by reference all preceding allegations of law and fact contained in paragraphs 1-26.

28. Defendants engaged in illegal and unconstitutional discriminatory practices and discriminated against him because of his disability in violation of State and Federal laws; including, but not limited to, 42 U.S.C. §1201 et. seq., and Title VII of the Civil Rights Act.

29. As a proximate result of Defendants' wrongful termination, arbitrary, capricious, malicious and discriminatory conduct, pro se Plaintiffs suffered intentional infliction of severe emotional distress; loss and requests an award for actual and compensatory damages; requests reimbursement for medical bills for treatment for exacerbation of symptoms of anxiety, depression and PTSD; punitive damages and attorney fees and costs in an amount to be fully proved at the time of trial.

## THIRD CLAIM FOR RELIEF
### (Damages for Intentional Infliction of Severe Emotional Distress)

30. Plaintiffs hereby re-alleges and re-incorporates by reference all preceding allegations of law and fact contained in paragraphs 1-30.

31. Defendants intentionally inflicted severe emotional distress upon pro se Plaintiffs and engaged in illegal, unconstitutional discriminatory and discriminatory practices because of his disability in violation of State and Federal laws; including, but not limited to 42 U.S.C. §1201 et. seq., and Title VII of the Civil Rights Act.

32. As a proximate result of Defendants' wrongful, retaliatory, arbitrary, capricious, and malicious and discriminatory conduct, pro se Plaintiffs suffered intentional infliction of severe emotional distress; loss of wages; actual and compensatory damages; and requests an award for actual and compensatory damages; requests reimbursement for medical bills for treatment for exacerbation of symptoms of anxiety, depression and PTSD; punitive damages and attorney fees and costs in an amount to be fully proved at the time of trial.

## FOURTH CLAIM FOR RELIEF
### (Damages for Defamation)

33. Plaintiffs hereby re-alleges and re-incorporates by reference all preceding allegations of law and fact contained in paragraphs 1-32.

34. Defendants defamed pro se Plaintiffs with this Court, state court, the public, their neighbors, city officials, police and in the media.

35. Defendants violated in violation of Sec. 703 of Title VII and discriminated against pro se Plaintiff because of his traumatic brain injury in violation of State and Federal laws; including, but not limited to 42 U.S.C. §1201 et. seq., and Title VII of the Civil Rights Act.

36. As a proximate result of Defendants' wrongful, retaliatory, arbitrary, capricious, and malicious, discriminatory and defamatory conduct, Plaintiff suffered intentional infliction of severe emotional distress; actual and compensatory damages; and requests an award for actual and compensatory damages; requests reimbursement for medical bills for treatment for exacerbation of symptoms of anxiety, depression and PTSD; punitive damages and attorney fees and costs in an amount to be fully proved at the time of trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, having set forth various claims against the Defendants, pro se Plaintiffs Andrew J. O'Connor and Mary E. Henry, prays for the following relief:

a. That the Plaintiffs be awarded punitive damages for deprivation of civil rights in violation of State and Federal laws; including, but not limited to 42 U.S.C. §1201 et. seq., and Title VII of the Civil Rights Act, including costs and attorney fees;

b. That the Plaintiffs be awarded damages to be fully proved at the time of trial including, but not limited to economic, compensatory and actual damages;

c. That the Plaintiffs be awarded general damages for Plaintiffs' mental anguish, severe emotional distress and pain and suffering;

21

d.  That the Plaintiffs be awarded their fees and costs associated with this action;

e.  That Plaintiffs be awarded treble damages and reasonable attorney's fees and costs pursuant to 42 U.S.C. §1201 et. seq., and Title VII of the Civil Rights Act; and

f.  That the Court grant any such other relief that may be just and proper.

## DEMAND FOR JURY TRIAL

Pro se Plaintiffs Andrew J. O'Connor and Mary Henry, hereby demands a trial by jury.

**Dated:** January 12, 2019

Respectfully submitted,
**ANDREW J. O'CONNOR AND MARY E. HENEY**

*s/Andrew J. O'Connor and Mary E. Henry*
**ANDREW J. O'CONNOR AND MARY E. HENRY**
Pro se Plaintiffs
1220 W. Devonshire Court
Lafayette, CO 80026
Tel: (303) 499-4585
Email: oconnorandrew@hotmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2019, **COMPLAINT FOR DAMAGES PURSUANT TO 42 U.S.C. § 1201 et seq., and TITLE VII OF THE CIVIL RIGHTS ACT** was filed and served via email or Regular U.S. Mail on the following:

Ballard Spahr
**Attn: J. Mathew Thornton**
1225 17th Street, Suite 2300
Denver, CO 80202
Tel: (303) 292-4200
Fax: (303) 296-3956
Email: thortonj@ballardspahr.com
Attorneys for Defendants